Diyari Vazquez (SBN 222461)
  dvazquez@vgcllp.com
Melissa N. Eubanks (SBN 274491)
  meubanks@vgcllp.com
**VGC, LLP**
9461 Charleville Blvd. #757
Beverly Hills, California 90212
Telephone: (424) 272-9855

*Attorneys for Defendant*
FRESHREALM, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RHONDA CASANERES, as an individual, and on behalf of other similarly situated employees,<br><br>Plaintiff,<br><br>v.<br><br>FRESHREALM, INC., and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No.<br><br>**DEFENDANT FRESHREALM, INC.'S NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453 AND ACCOMPANYING EXHIBITS**<br><br>[Filed concurrently with Civil Cover Sheet; Exhibits and Declaration In Support Thereof; and Certification of Conflicts and Interested Entities or Persons]<br><br>(Contra Costa County Superior Court Case No. C25-00987) |

NOTICE OF REMOVAL

**TO THE CLERK AND HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND PLAINTIFF'S ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Pursuant to 28 U.S.C. §§ 1446 and 1453, Defendant FreshRealm, Inc. ("FreshRealm") hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332(d) and 1441 and states the following grounds for removal:

## I.    INTRODUCTION

1. On April 8, 2025, Plaintiff Rhonda Casaneres ("Plaintiff") filed her complaint in the Superior Court of the State of California, County of Contra Costa, styled and captioned as above ("Complaint"). The matter was given Case No. C25-00987 and assigned to the Honorable Edward G. Weil ("State Court Action"). Under 28 U.S.C. §1446(a), attached as Exhibits A–G are copies of all proceedings, pleadings, and orders served in the State Court Action.

2. This case is purportedly brought as a class action for damages and/or penalties under the California Labor Code by Plaintiff on behalf of herself and other putative class members. In the Complaint, Plaintiff brings claims for, *inter alia,* FreshRealm's alleged failure to pay all minimum and overtime wages, provide meal and rest periods, provide timely wage payments upon separation, and provide accurate itemized wage statements. Plaintiff also alleges FreshRealm committed acts of unfair competition as defined by the California Unfair Business Practices Act. Based on the allegations in the Complaint and on behalf of herself and the putative class members, Plaintiff seeks compensatory and statutory damages, restitution, injunctive relief, statutory and civil penalties, and attorneys' fees and costs.

3. On April 16, 2025, Plaintiff purported to serve FreshRealm. A true and correct copy of the Civil Cover Sheet, Complaint, Summons, and Proof of Service are attached, respectively, as Exhibits A – D.

4. On May 15, 2025, FreshRealm filed an Answer to the Complaint in the State

Court Action, which is pending processing by the Superior Court Clerk. A true and correct copy of the unconfirmed copy of FreshRealm's Answer was served upon Plaintiff's counsel on May 16, 2025, and is attached as Exhibit G.

5. This Notice of Removal has been filed within 30 days of completion of service of the Complaint upon FreshRealm, and, as no other defendants have been named or served, the requirement of 28 U.S.C. § 1446(b) requiring removal within 30 days of service of the Complaint upon the first defendant has been satisfied. In addition, this Notice of Removal has been filed within one year of the commencement of the State Court Action (April 8, 2025) as required by 28 U.S.C. § 1446(c).

6. FreshRealm denies liability on all claims alleged in this action, denies that class certification is proper, and reserves all rights in these regards. However, for purposes of meeting the jurisdictional requirements of removal *only*, FreshRealm submits that this Court has subject matter jurisdiction over all claims alleged in this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). This Court has jurisdiction under CAFA because this is a putative class action in which: (a) there are 100 or more members in Plaintiff's proposed class; (b) at least some members of the proposed class, including Plaintiff, have a different citizenship from FreshRealm; (c) the alleged claims of the proposed class members, in the aggregate, exceed the sum or value of $5,000,000, exclusive of interest and costs; and (d) no exceptions to CAFA apply. *See* 28 U.S.C. §§ 1446, 1453; *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (explaining that "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant" (citation and internal quotation marks omitted)).

## II.   CLASS ACTION FAIRNESS ACT JURISDICTION

### A.   Plaintiff's Proposed Class Consists of More Than 100 Members.

7. For CAFA jurisdiction to attach, the number of all proposed putative class members in the aggregate must equal or exceed one hundred. 28 U.S.C. § 1332(d)(5)(B). Here, Plaintiff defines the putative class (the "Class") in this action as follows: "[A]ll

individuals who worked for [FreshRealm] in a California location as non-exempt employees during the Class Period. (collectively, the 'Class Members')." (Compl. ¶ 23.)

8. The Class consists of non-exempt employees who worked or are working for FreshRealm in the state of California between April 8, 2021, and the present (the "Class Period"). During the Class Period, FreshRealm employed approximately 775 non-exempt employees in the State of California. (Declaration of Gina Farschman in Support of Defendant FreshRealm, Inc.'s Notice of Removal ["Farschman Decl."] ¶ 8.)

### B. Diversity of Citizenship is Established.

9. Diversity of citizenship is established pursuant to 28 U.S.C. § 1332(d)(2) because members of the class are citizens of California, and FreshRealm is not a citizen of California.

10. Plaintiff was a resident of and domiciled in California (Farschman Decl. ¶ 6), and she was therefore a citizen of California for diversity of citizenship purposes. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (holding that a "natural person's state citizenship is . . . determined by her state of domicile").

11. Plaintiff seeks to represent a class of FreshRealm's current and former California non-exempt employees. (Compl. ¶¶ 22, 23, 29.)

12. For purposes of diversity jurisdiction, a corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its "principal place of business." 28 U.S.C. § 1332(c)(1).

13. FreshRealm is a corporation incorporated under the laws of the State of Delaware. (Farschman Decl. ¶ 3.)

14. A corporation's "principal place of business" is "the place where a corporation's officers direct, control, and coordinate the corporation's activities" or its "nerve center," and "in practice it should normally be the place where the corporation maintains its headquarters." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010); *Davis v. HSBC Bank Nev., N.A.,* 557 F.3d 1026, 1029 (9th Cir. 2009). FreshRealm maintains its headquarters at 3301 N. Dallas Avenue, Lancaster, Texas 75134, where its officers direct,

control, and coordinate the corporation's activities. (Farschman Decl. ¶ 4.)

15. Accordingly, for the purposes of removal, and pursuant to 28 U.S.C. § 1332(c), FreshRealm is and has been for all relevant times a citizen of the States of Delaware and Texas.

16. The Complaint names 50 "Does" as defendants. For the purposes of removal, however, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1).

17. Because Plaintiff was a citizen of California who sues on behalf of the Class, while FreshRealm is a citizen of Delaware and Texas, at least one, if not all, Class Members and FreshRealm are diverse from one another. Thus, the minimal diversity requirement of 28 U.S.C. § 1332(d)(2)(A) is satisfied.

### C. The Aggregate Amount-in-Controversy Exceeds $5,000,000.

18. FreshRealm contends that Plaintiff's claims are without merit, that neither Plaintiff nor the Class Members are entitled to money, or any other form of recovery, in any amount whatsoever, and that class certification would be inappropriate. For purposes of meeting the jurisdictional requirements of removal only, FreshRealm submits that the aggregate amount "in controversy" for all Class Members exceeds the sum or value of $5,000,000, as required by 28 U.S.C. § 1332(d)(2).

19. "In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6); *Standard Fire Ins. Co. v. Knowles,* 568 U.S. 588, 592 (2013).

20. Plaintiff seeks, *inter alia,* recovery for unlawful business practices, recovery for underpaid wages based on failure to pay all minimum and overtime wages, recovery for time worked during meal and rest periods, unpaid meal period penalties, unpaid rest period penalties, waiting time penalties, wage statement penalties, and attorneys' fees during the applicable statutory periods on behalf of herself and the Class Members. (Compl. ¶¶ 2, 13 – 21, 31 – 76.) Accepting Plaintiff's allegations as true, as must be done

at this stage, *see Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017); *Cain v. Hartford Life & Accident Ins. Co.*, 890 F. Supp. 2d 1246, 1249 (C.D. Cal. 2012), the amount in controversy exceeds the $5,000,000 threshold for CAFA removal. *See* 28 U.S.C. § 1332(d).

21. In establishing that the amount in controversy exceeds $5,000,000, FreshRealm makes the following reasonable assumptions based on Plaintiff's Complaint and the facts regarding FreshRealm's non-exempt employees in California:

   a. Plaintiff's Class includes all FreshRealm current and former non-exempt employees in California during the Class Period. (Compl. ¶ 23.)

   b. FreshRealm employed approximately 775 non-exempt employees in California during the Class Period. (Farschman Decl. ¶ 8.)

   c. The average hourly wage of FreshRealm's non-exempt employees in California during the Class Period was approximately $20.35. (Farschman Decl. ¶ 9.)

   d. FreshRealm's non-exempt employees in California during the Class Period were fulltime and typically scheduled for eight (8) hour shifts per workday, five (5) days per workweek. (Farschman Decl. ¶ 9.)

   e. Class Members collectively worked an estimated 30,751 workweeks during the Class Period. To calculate this figure, FreshRealm took the total number of weeks the Class Members were employed (34,167) and conservatively assumed Class Members worked only 90% of those weeks (*i.e.,* this calculation credits Class Members with taking more than five weeks each year for vacation, sick leave, etc.). (Farschman Decl. ¶ 10.)

   f. The number of FreshRealm's non-exempt employees in California who remained employed as of April 8, 2024, is approximately 339. (Farschman Decl. ¶ 8.)

      g.    The number of FreshRealm's non-exempt employees in California who were terminated from April 8, 2021, to present is approximately 463. (Farschman Decl. ¶ 8.)

### 1. Unpaid Meal and Rest Period Premiums Claim.

22. Under California law, an employee who works more than five hours per day is entitled to an uninterrupted meal period of at least 30 minutes. Cal. Lab. Code § 512. An employee who works four hours or a "major fraction thereof" is entitled to a 10-minute rest period. Wage Order 9 § 11090(12). If an employer fails to provide a legally required meal or rest period, the employer must pay a meal or rest period penalty of one hour of wages at the employee's regular rate of pay. Cal. Lab. Code § 226.7. If both a meal period and a rest period are not provided to an employee, he or she can recover "two premium payments per workday—one for failure to provide one or more meal periods, and another for failure to provide one or more rest periods." *United Parcel Serv., Inc. v. Superior Court,* 196 Cal. App. 4th 57, 69 (2011). This penalty is in addition to payment for any time worked during a meal period.

23. Concerning her meal period claims, Plaintiff alleges that FreshRealm "had a pattern, practice, and policy of not providing compliant meal periods," which resulted in "Plaintiff and Class Members [not receiving] all meal periods or payment of one (1) additional hour of pay at Plaintiff and Class Members' regular rate of pay when they did not receive a timely, uninterrupted thirty (30) minute off-duty meal period." (Compl. ¶ 18.) Plaintiff, realleging and incorporating these allegations into her Second Cause of Action, further alleges that FreshRealm "had a practice of reprimanding and threatening employees for not working overtime, even when it was not mandatory, and would issue write-ups for this reason, [and] had a practice of failing to provide legally mandated second meal period after ten (10) hours of work." (*Id*. ¶ 44.) Plaintiff alleges that "[a]s a result of [FreshRealm's] policy and practices, Plaintiff and Plaintiff Class did not receive timely uninterrupted meal periods and were not compensated with premium wages for non-compliant meal periods." (*Id*.) Plaintiff further alleges that "[a]t all times relevant

hereto, Plaintiff and Plaintiff Class have worked shifts of more than five (5) hours in a workday" (*id*. ¶ 45), and that "[a]t varying times relevant hereto, Plaintiff and Plaintiff Class have worked shifts more than ten (10) hours in a workday and were regularly denied a legally compliant second meal period" (*id*. ¶ 47).

24.     Concerning her rest period claims, Plaintiff alleges that FreshRealm "had a pattern, practice, and policy of not providing uninterrupted rest periods[,]" whereby "[a]s a result of Defendant's time-consuming sanitation protocol, uniform removal and equipping procedure, daily work requirements, and demands, Plaintiff and Class Members did not receive all paid rest periods or payment of one (1) additional hour of pay at Plaintiff and Class Members' regular rate of pay when a paid rest period was missed, truncated, or interrupted." (Compl. ¶ 19.) Plaintiff, realleging and incorporating these allegations into her Third Cause of Action, alleges that "Plaintiff and Plaintiff Class consistently worked over four (4) hours per shift with no rest breaks, or otherwise had their rest breaks interrupted or shortened due to Defendant's uniform policies and practices." (*Id*. ¶ 51.) Plaintiff also alleges that "[r]outinely, Plaintiff and Plaintiff Class were required to work for six (6) hours before being permitted to take a rest period" and that "[w]hen they worked six (6) to eight (8) hours in a workday, Plaintiff and Plaintiff Class often only received one rest period instead of the two required by law." (*Id*. ¶ 52.) Plaintiff further alleges that "[w]hen Plaintiff and Plaintiff Class worked more than ten (10) hours in a workday, they never received the requisite third rest period." (*Id*.)

25.     Reading the forgoing allegations together, Plaintiff alleges that FreshRealm had a "policy and practice" whereby it "routinely" failed to provide employees required meal and rest periods during the Class Period. (*Id*. ¶¶ 17 – 19, 44 – 47, 51, 52.) While these allegations support applying a 100% violation rate, *see, e.g., Mejia v. DHL Express (USA), Inc.,* 2015 U.S. Dist. LEXIS 67212 **10-11 (C.D. Cal. 14 May 21, 2015) (100% violation rate may be based on allegations of uniformly adopted and maintained policies), FreshRealm instead will apply a 40% violation rate for meal break periods and a 30% violation rate for rest break periods, which are withing the range deemed

reasonable by California federal district courts, *see, e.g., Cavada v. Inter- Continental Hotels Grp.,* Inc., No. 19cv1675-GPC(BLM), 2019 WL 5677846, at *7 (S.D. Cal. Nov. 1, 2019) (reasonable to assume a 25% violation rate where a complaint alleged that defendant was in violation "periodically" or "from time to time" along with broader language describing a "pattern and practice" and "policy and practice"); *Olson v. Becton, Dickinson & Co.*, 2019 WL 4673329, at *4 (S.D. Cal. Sept. 25, 2019) (25% violation rate deemed appropriate based on the plaintiff's "pattern and practice" allegation); *Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *3-4 (C.D. Cal. Apr. 9, 2019) (finding a 50% violation rate, or 2.5 out of 5 missed meal periods per week, and a 25% violation rate, or 2.5 out of 10 missed rest period per week, reasonable where the complaint alleged a "pattern and practice" of meal and rest period violations); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (finding a 60% violation rate for the meal period claim or three of five violations per workweek, and a 30% violation rate or three of ten rest periods per workweek, reasonable where the complaint alleged that the defendant had a "policy and practice" of meal and rest period violations); *Alvarez v. Office Depot, Inc.*, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (same: 60% violation rate); *Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *4 (C.D. Cal. Jan. 7, 2015) (same: 50% violation rate); *cf. Mendoza v. Savage Servs. Corp.*, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) ("When a defendant's calculation lacks factual support, courts in [the Central District of California] routinely apply a 20% violation rate").

26. Based on these allegations, the amount in controversy for alleged meal period violations is $1,251,566. Assuming a 40% violation rate, or 2 meal premium penalties per workweek, this amount is calculated by multiplying the average hourly wage of non-exempt employees in California from April 8, 2021, to present ($20.35) by 2 premiums by the amount of aggregate workweeks from April 8, 2021, to present (30,751), totaling $1,251,497.36 ($20.35 x 2 x 30,751 workweeks = $1,251,566).

27. Based on these allegations, the amount in controversy for alleged rest period violations is $1,877,349. Assuming a 30% violation rate, or 3 premium penalties out of

10 rest breaks per workweek, this amount is calculated by multiplying the average hourly wage of non-exempt employees in California from April 8, 2021, to present ($20.35) by 3 premiums by the amount of aggregate workweeks from April 8, 2021, to present (30,751), totaling $3,788,270.01 ($20.35 x 3 x 30,751 workweeks = $1,877,349).

### 2. *Failure to Pay Overtime Claim.*

28. Plaintiff alleges that FreshRealm "had a pattern, practice, and policy" of not providing Plaintiff and Class Members required meal and rest breaks, and as a result FreshRealm "failed to record and/or pay Plaintiff and Class Members for all hours worked in excess of eight (8) hours and/or twelve (12) hours per workday and failed to pay said hours at the proper overtime and double time rates." (Compl. ¶ 17; *see also id.* ¶ 39.) Plaintiff seeks damages under California Labor Code §§ 510 and 1194. (*Id*. ¶ 40.)

29. Given that Plaintiff alleges that FreshRealm had a "policy and practice" of failing to pay Class Members for missed meal and rest breaks, it is reasonable to assume one hour of unpaid overtime per Class Member per workweek. *See, e.g., Vallejo v. Sterigenics U.S., LLC,* No. 3:20-cv-01788-AJBAHG, 2021 WL 2685348, at *4 (S.D. Cal. June 29, 2021) (one hour of unpaid overtime per week is a proper assumption based on allegations of "regular" violations of overtime laws); *Blevins v. Republic Refrigeration, Inc.,* No. CV 15- 04019 MMM (MRWx), 2015 WL 12516693, at *10 (C.D. Cal. Sep. 28, 2015) (reasonable to assume a violation rate of one hour of unpaid overtime per week based on allegations that the defendant had a "pattern and practice" and "regularly" miscalculated overtime).

30. Accordingly, the amount in controversy for Plaintiff's unpaid wages claim is at least $939,751. This amount is calculated by multiplying the aggregate amount of workweeks worked by FreshRealm's non-exempt employees in California from April 8, 2021, to present (30,751), by the one hour of allegedly unpaid overtime wages per week, by the average overtime rate for FreshRealm's non-exempt employees in California from April 8, 2021, to present, which is calculated at one-and-a-half times the average hourly wage for such employees during the same period (i.e., $20.35 x 1.5 = $30.56). The

minimum hourly overtime rate for Class Members multiplied by the number of overtime hours allegedly worked and not paid during the Class Period thus totals $939,751 (30,751 hours x $30.56 average overtime rate of pay).

### 3. Waiting Time Penalties.

31. "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201. California Labor Code § 203 provides that when "an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced" but no longer than 30 days.

32. Plaintiff alleges that, for Class Members whose employment terminated, FreshRealm "failed to pay all employees all wages earned during their employment at the time of their separation in violation of Labor Code sections 201 and 202." (Compl. ¶ 55.) Plaintiff thus demands that "Plaintiff and members of the Plaintiff Class who terminated employment within four (4) years of the filing of this complaint until the date of entry of judgment, without being paid the proper payments as described herein are entitled to thirty (30) days of pay at their regular rate of pay as waiting time penalties." (*Id.* ¶ 59.)

33. Given Plaintiff's allegations, the amount in controversy for her waiting time penalties claim is $2,261,292. This amount is calculated by multiplying the average hourly wage earned by non-exempt employees from April 1, 2021 to present, by 30 days, by 8 hours, by the number of terminated employees during the Class Period ($20.35 x 30 days x 8 hours x 463 terminated non-exempt employees). (Farschman Decl. ¶ 8.)

### 4. Wage Statement Penalties.

34. Plaintiff also seeks penalties under California Labor Code § 226(a) for FreshRealm's alleged failure to provide Class Members with accurate itemized wage statements. California Labor Code § 226(a) provides that "[a]n employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee . . . an accurate itemized statement in writing showing . . . gross wages earned." An employee may

recover $50 for the first pay period in which a violation occurs and $100 for each subsequent violation in a subsequent pay period, not to exceed an aggregate penalty of $4,000 per employee. Cal. Lab. Code § 226(e).

35. Plaintiff alleges that FreshRealm "willfully and intentionally failed to make and/or keep records which accurately reflect the hours worked by Plaintiff and Plaintiff Class." (Compl. ¶ 64.) Plaintiff demands that, "[f]or each employee suffering an injury as a result of Defendant's knowing and intentional failure to provide an accurate, itemized wage statement, the employee is entitled to recover the greater of actual damages or fifty dollars ($50.00) for the initial pay period in which a violation occurs, and one hundred dollars ($100.00) per employee for each violation in a subsequent pay period." (*Id.* ¶ 66.)

36. This claim is subject to a one-year statute of limitations, and courts have found that a 100% violation rate is reasonable given that a pay period will have at least one discrepancy based on Plaintiff's allegations of unpaid wages and failure to provide properly compensated meal and rest periods on a weekly basis. *See, e.g., Sanchez v. Abbott Lab'ys,* No. 2:20-CV-01436-TLN-AC, 2021 WL 2679057, at *5 (E.D. Cal. June 30, 2021); *Bermejo v. Lab'y Corp.*, No. CV 20-5337-DMG (SKx), 2020 WL 6392558, at *7 (C.D. Cal. Nov. 2, 2020) (noting that every wage statement covering a two-week period likely contained an error given that the defendant "can reasonably assume its alleged 'practices and policies' of underpaying wages translate to about one overtime . . . violation each per week"); *Cavada*, 2019 WL 5677846 at *8 (holding that a 100% violation rate is a reasonable assumption for wage statement penalties).

37. Given Plaintiff's allegations, the amount in controversy for Plaintiff's wage statement violations claim may be as much as $1,356,000. Since FreshRealm used a weekly pay schedule during the Class Period (Farschman Decl. ¶ 11), the maximum penalty of $4,000 per employee who was employed during the one-year limitations period is implicated, as the sum of the $50 initial penalty plus the cumulative total of each subsequent $100 violation over 47-week period (i.e., this calculation credits Class Members with taking more than five weeks each year for vacation, sick leave, etc.)

exceeds $4,000 (i.e., $50 for initial violation penalty + (46 pay periods x $100) = $4,650). The amount in controversy thus was calculated by multiplying $4,000 by 339 (the number of non-exempt employees in California as of April 8, 2024, *see* Farschman Decl. ¶ 8), totaling $1,356,000.

### 6. Attorneys' Fees

38.  As set forth above, Plaintiff's claims for damages and penalties, taken together, put into controversy at least $7,685,958 ($1,251,566 + $1,877,349 + $939,751 + $2,261,292 + $1,356,000 = $7,685,958). This amount alone exceeds the $5,000,000 jurisdictional threshold under CAFA.

39.  The amount in controversy also includes any attorneys' fees that may be awarded to Plaintiff's counsel. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998); *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is no question that future [attorneys' fees] are at stake in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." (*quoting Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 417 (9th Cir. 2018)).

40.  The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." *Staton v. Boeing Co.,* 327 F.3d 938, 968 (9th Cir. 2003).) Courts have found that it is reasonable for a defendant to rely upon this benchmark when calculating the amount in controversy for removal. *See, e.g., Evers v. La-Z-Boy Inc.,* No. 21cv2100-LL-BLM, 2022 WL 2966301, at *12 n.8 (S.D. Cal. July 27, 2022) ("[T]he Court finds that the 25% 'benchmark' is appropriate for traditional diversity jurisdiction.").

41.  Plaintiff seeks attorneys' fees under a variety of statutes, including California Labor Code §§ 226 and 1194. FreshRealm may thus consider attorneys' fees in its calculation of the amount in controversy for removal purposes. Considering those fees

here, 25% of the total dollar amount in controversy is $1,921,490 ($7,685,958 aggregate damages x .25 = $1,921,490).

42.     Thus, the total amount placed in controversy by Plaintiff's claims is, at least, $9,607,448 ($7,685,958 + $1,921,490 = $9,607,448).[1]

43.     In sum, while FreshRealm contends that Plaintiff's claims have no merit and cannot be certified for class treatment, because the amount in controversy in this action is at least $5,000,000, the jurisdictional threshold under CAFA is satisfied and removal is proper. *See* 28 U.S.C. § 1332(d).

### D.     **No CAFA Exceptions Apply.**

44.     CAFA contains certain jurisdictional exceptions, none of which apply here.

45.     The "Local Controversy Exception" does not apply because FreshRealm is not a citizen of California, the state in which the action was originally filed. *See* 28 U.S.C. § 1332(d)(4)(A)(i)(II)(cc).

46.     The "Home State Exception" also does not apply because FreshRealm, the sole and primary named defendant, is not a citizen of California, the state in which the action was originally filed. *See* 28 U.S.C. § 1332(d)(4)(B).

47.     Accordingly, all of the requirements for federal jurisdiction under 28 U.S.C. § 1332(d) are satisfied, and removal of this action is proper under 28 U.S.C. §§ 1441, 1446, and 1453

### III.     VENUE

48.     Plaintiff's State Court Action was commenced in the Superior Court of the State of California for the County of Contra Costa and, under 28 U.S.C. §§ 84(c), 1446, and 1453, may be removed to this United States District Court for the Northern District of California, which embraces Contra Costa County within its jurisdiction.

//

---

[1] This amount excludes Plaintiff's claims for unfair competition and failure to pay minimum wages. However, to the extent Plaintiff disputes that the amount in controversy exceeds $5,000,000, FreshRealm reserves the right to assert damages as to all claims.

## IV. PROCEDURAL REQUIREMENTS.

49. FreshRealm satisfies the procedural requirements for removal.

50. Pursuant to 28 U.S.C. § 1441(a), FreshRealm has removed this case to the district and division embracing the place where the State Court Action is pending.

51. Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders filed in the State Court Action are attached hereto as Exhibits A–G.

52. Pursuant to 28 U.S.C. § 1446(b)(1), (c), this Notice of Removal is timely because it was filed within thirty (30) days of service of the Complaint on FreshRealm and within one year of commencement of the action.

53. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal will be served upon Plaintiff's counsel and a copy filed with the Clerk of Court for Department of the Superior Court of the State of California, County of Contra Costa.

## V. CONCLUSION

54. For the reasons stated herein, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, the State Court Action may be removed to federal district court, and FreshRealm requests that it be so removed.

**WHEREFORE**, FreshRealm respectfully gives notice of and removes this action to this Court.

Dated: May 16, 2025

**VGC, LLP**

By: _____
Melissa Eubanks
*Attorneys for Defendant*
FRESHREALM, INC.