Kevin Mahoney (SBN: 235367)
kmahoney@mahoney-law.net
John A. Young, Esq. (SBN: 299809)
jyoung@mahoney-law.net
**MAHONEY LAW GROUP, APC**
249 East Ocean Boulevard, Suite 814
Long Beach, CA 90802
Telephone No.: (562) 590-5550
Facsimile No.: (562) 590-8400

Attorneys for Plaintiff RHONDA CASANARES, as an individual and on behalf of all similarly situated

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RHONDA CASANARES, as an individual and on behalf of all similarly situated,<br><br>           Plaintiff,<br><br>  v.<br><br>FRESHREALM, INC.; and DOES 1 through 50, inclusive,<br>           Defendant. | Case No. 4:25-cv-04249-KAW<br><br>**CLASS ACTION:**<br><br>**AMENDED PLAINTIFF RHONDA CASANARES' NOTICE OF MOTION AND MOTION FOR REMAND; MEMORANDUM OF POINTS AND AUTHORITIES**<br>Date:     August 7, 2025<br>Time:     1:30 p.m.<br>Crt. Rm.  9<br><br>Complaint Filed: April 8, 2025<br>Date of Removal: May 16, 2025<br>Trial Date:    None Yet Set |

PLAINTIFF RHONDA CASANARES' NOTICE OF MOTION AND MOTION FOR REMAND; MEMORANDUM OF POINTS AND AUTHORITIES

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on August 7, 2025, at 1:30 p.m., or as soon thereafter as counsel may be heard, Plaintiff RHONDA CASANARES ("Plaintiff"), on behalf of Plaintiff and others similarly situated, by and through Plaintiff's counsel, will move and hereby does move the Court pursuant to 28 U.S.C. section 1447, subdivision (c), for remand of the above entitled action back to the Superior Court of California, in and for the County of Contra Costa. This motion is made following Defendant FRESHREALM, INC.'s ("Defendant") removal pursuant to 28 U.S.C. sections 1332, 1441, 1446, and 1453, on or about May 16, 2025.

The grounds for this motion, as more fully set forth in the accompanying memorandum of points and authorities, are that Plaintiff pled a valid state-law class action against Defendant and that diversity jurisdiction is lacking. Accordingly, removal was improper.

The motion will be based on this notice, the attached memorandum of points and authorities, the papers and records on file herein, and on such oral and documentary evidence as may be presented at the hearing of this motion.

Dated: June 16, 2025                    **MAHONEY LAW GROUP, APC**

_____
Kevin Mahoney, Esq.
John A. Young, Esq
Attorneys for Plaintiff, RHONDA
CASANARES, and on behalf of all others
similarly situated

PLAINTIFF RHONDA CASANARES' NOTICE OF MOTION AND MOTION FOR REMAND;
MEMORANDUM OF POINTS AND AUTHORITIES

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff RHONDA CASANARES ("Plaintiff") brought this class action on behalf of Plaintiff and other similarly situated employees, alleging that Defendant's policies violated multiple sections of the California Labor Code. Specifically, Plaintiff alleged that Defendant FRESHREALM, INC.'s ("Defendant") practices of violating the applicable Industrial Welfare Commission ("IWC") Wage Orders, Code of Regulations, and Labor Codes, including: (1) failure to pay all wages; (2) failure to provide meal and rest periods or provide compensation thereof; (3) failure to provide accurate itemized wage statements; and (4) failure to pay all wages due upon separation of employment. Defendant removed this case to federal court, alleging removal jurisdiction under 28 U.S.C. section 1332, subdivision (d), the Class Action Fairness Act ("CAFA.")

Plaintiff now moves to have this case — involving California workers and California law — remanded to the Superior Court of California in and for the County of Contra Costa. The foundation of Defendant's removal is the estimated amount-in-controversy.  Defendant's estimated amount-in-controversy is purely guesswork, which is premised on the arbitrary the following: putative class members working one (1) hour of overtime off-the-clock, missing two (2) meal periods, and three (3) rest periods over the course of an arbitrary number of work weeks worked during the class period. Defendant builds on this assumption by ascribing an arbitrary amount in penalties and speculating about attorney's fees. Such speculation, when challenged by a motion for remand, must be supported with real evidence. Defendant failed to prove by a preponderance of evidence that the amount in controversy exceeds the jurisdictional amount. Defendant's Notice of Removal (Dkt. No.: 1, "NOR") indicates that Defendant cannot satisfy this burden.

///

///

## II.    DEFENDANT'S JURISDICTIONAL ESTIMATES ARE BASED ON CONJECTURE AND SPECULATION

Defendant's Notice of Removal (Dkt. No. 1) is predicated on a combination of bare assumptions, as follows:

1.    Defendant assumed, without supporting evidence, that during the Class Period "Defendant "employed approximately 775 non-exempt employees in the State of California." (NOR, at p. 4:5-7; Declaration of Gina Farschman ("Farschman Dec. ¶ 8.)

2.    Defendant assumed, without supporting evidence, that "the claims asserted by Plaintiff in the complaint exceeds the $5,000,000 jurisdictional threshold under 28 U.S.C. section 1332, subdivision (d)." (NOR, at p. 5:16-18.)

3.    Defendant assumed, without supporting evidence, that "[t]here are 30,751 weeks worked by food packers in the state of California in the period from April 8, 2021 to April 8, 2025." (NOR, at p. 6:19-24.);

4.    Defendant assumed, without supporting evidence, that "[t]here are at least 250 food packers who ceased performing services between April 8, 2021 to April 8, 2025." (NOR, at p. 6:19.);

5.    Defendant assumed, without supporting evidence, that "Waiting time penalties [are] $2,261,292.00." (NOR, at p. 11:18-19.);

6.    Defendant assumed, without supporting evidence, that "Plaintiff alleges that all pay stubs issued did not comply with California Labor Code Section 226" and that damages "equates to $1,356,000.00." (NOR, at p. 12:23.);

7.    Defendant assumed, without supporting evidence, that "[t]he total amount in controversy for purposes of diversity jurisdiction under 28 U.S.C. § 1332(D) is therefore in excess of $7,685,958." (NOR, at p. 13:6-9.);

8.    Defendant assumed, without supporting evidence, that "Plaintiff will seek at least $1,921,490.00 in attorney fees." (NOR, at p. 14:1-2.); and

9.    Defendant assumed, without supporting evidence, that "there is a total

amount in controversy of at least $9,607,448.00." (NOR, at p. 14: 3-4.)

As detailed below, Defendant's erroneous and arbitrary estimates lack the necessary evidence to substantiate Defendant's alleged amount to meet the jurisdictional requirement.   Therefore, when Defendant asserts the amount in controversy in this case, Defendant is drawing a conclusion that is premised on a series of assumptions. The assumptions, in turn, are based on speculations and conjectures. As discussed below, this sort of "evidence" cannot suffice to prove that the amount in controversy requirement has been met.

## III.    DEFENDANT HAS THE BURDEN OF ESTABLISHING FEDERAL COURT   JURISDICTION; DEFENDANT'S NOTICE OF REMOVAL FALLS FAR SHORT   OF SATISFYING THAT BURDEN

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See *Bender v. Williamsport Area School District*, 475 U.S. 534, 541 (1986).  Only state court actions that could originally have been filed in federal court may be removed. 28 U.S.C. §1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

Enacted in 2005, the Class Action Fairness Act ("CAFA") "gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015). "[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

"In determining the amount in controversy, courts first look to the complaint." *Ibarra*, 775 F.3d 1193, at p. 1197. "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the

PLAINTIFF RHONDA CASANARES' NOTICE OF MOTION AND MOTION FOR REMAND;
MEMORANDUM OF POINTS AND AUTHORITIES

aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged. [citation]" Id. "The preponderance of the evidence standard means the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount." (quotations and citation omitted) *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204 (E.D.Cal.2008), at p. 1204.

"The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" [citation.] Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d 1193, at p. 1197.

**A.     Defendant Failed to Provide Any Evidence of The Amount of Economic Losses in Controversy**

Defendant's Notice of Removal is built on speculation and conjecture. Defendant asserts that "the claims asserted by Plaintiff in the complaint exceeds the $5,000,000 jurisdictional threshold," and calculates the amount in controversy as "at least $9,607,448.00" Defendant's "amount in controversy" estimate is comprised of the following conjectures: (1) $1,251,566.00 for meal period penalties, where Defendant hypothesizes two missed meal periods per week and assumes 30,751 work weeks; (2) $1,877,349.00 for rest period penalties, where Defendant hypothesizes three missed rest periods per week and assumes 30,751 work weeks; (3) $2,261,292.00 in waiting time penalties, based on an assumption of 463 non-exempt food packers — as opposed to putative class members — terminated between April 8, 2021 to April 8, 2025, and, apparently, ascribing a day's pay of $20.35 per driver; (4) $1,356,000.00, based off an assumption that "all pay stubs issued did not comply with California Labor Code Section 226" and nothing else (i.e. no mention of the purported number of wage statements issued during this time period.); and (5) estimating an additional award of attorney's fees,

1  in the amount of $1,921,490.00 (NOR, at p. 14:1-2.)

2        1.     <u>Defendant's Calculation of Work Weeks Worked by Class</u>

3  <u>Members Is Pure Speculation</u>

4        Defendant's calculation of workweeks, and thus the entire asserted amount

5  in controversy, rests entirely on a declaration that concedes its own unreliability.

6  While the declaration purports to be based on a "report" to assess workweeks it

7  simultaneously admits the underlying data is derived from mere "estimates and

8  guesses." ("Farschman Dec. ¶ 8.) This is further compounded by Defendant's

9  reliance on an arbitrary 90% "estimate" of weeks actually worked, a figure entirely

10  without substantiation. The removing party also bears the "burden of providing

11  evidence of the frequency of the violations." *Sanchez v. Russell Sigler, Inc.*, 2015

12  U.S. Dist. LEXIS 55667, at *20 (C.D. Cal. Apr. 28,2015). Without such evidence

13  there can be no plausible allegation that the amount exceeds the jurisdictional

14  threshold because the assumptions underlying the damage calculations are

15  unsupported.

16        Defendant fails to provide other crucial information necessary for accurately

17  calculating the amount in controversy, including but not limited to: the number of

18  workweeks and shifts, hourly rates of pay, and or putative class members' dates of

19  employment, etc. See e.g., *Yocupicio v. PAE Group, LLC*, 2014 U.S. Dist. LEXIS

20  178723, at *21-22 (C.D. Cal. Dec. 29, 2014). Defendant, as the sole custodian of

21  its own employment and timekeeping records, is in the singular position to provide

22  precise, verifiable figures for actual workweeks and employees. Instead, it offers

23  nothing more than theoretical constructs based on a foundation of pure guesswork

24  and unsubstantiated estimations. Defendant cannot meet its burden by inventing

25  violation rates and applying them to speculative numbers.

26        **2.**     <u>Defendant's Estimate of Unpaid Wages Owed Is Guesswork</u>

27        Defendant claims that violation rates of 40% for meal breaks and 30% for

28  rest breaks are "reasonable" by citing cases involving "pattern and practice" or

"policy and practice" allegations. However, this selectively misapplies the cited authority. Plaintiff's complaint with regard to Plaintiff's unpaid wage claim, the complaint does not allege a "policy" to not pay all wages at the appropriate rates. The cases Defendant cites, such as *Cavada v. Inter-Continental Hotels Grp., Inc.*, often found lower "reasonable" rates (e.g., 25%) when allegations described violations happening "periodically" or "from time to time" alongside broader "pattern and practice" language, distinguishing them from a formal "policy."

Defendant's reliance on these cases is misplaced, as they fail to account for the specific allegations in Plaintiff's complaint, which do not assert a formal policy of unpaid wages but rather highlight a recurring pattern of violations. This distinction is crucial, as it undermines Defendant's justification for their inflated assumption of one unpaid hour at the class members over time rate per week, which is not supported by the nature of the allegations in this case. Defendant's attempt to equate Plaintiff's claims with those involving a formal policy is a mischaracterization that should not influence the Court's assessment of the reasonableness of the alleged violation rates.

**3.** Defendant's Estimate of Meal and Rest Period Wages is Pulled from Thin Air

Defendant speculates that putative class members missed two (2) meal periods and three (3) rest periods per week during 30,751 work weeks. Where these numbers come from is a mystery. Defendant failed to file any declaration, attesting to, or otherwise offering evidence of, the legitimacy of these estimates. Initially, as addressed above, Defendant's work week count is pure speculation. Defendant misplaces its reliance on case law, as Defendant fails to provide the necessary evidence to substantiate its arbitrary assumptions. For example, in *Varsam v. Lab. Corp. of Am.*, 2015 U.S. Dist. LEXIS 90645, at *4 (S.D. Cal. July 13, 2015) the employer provides evidence that demonstrates the showing a defendant in this district must make to justify removal. In *Varsam*, defendant submitted the

PLAINTIFF RHONDA CASANARES' NOTICE OF MOTION AND MOTION FOR REMAND;
MEMORANDUM OF POINTS AND AUTHORITIES

deposition transcripts of plaintiff, its human resources specialist, as well as its expert in support of its opposition to the motion to remand. See *Varsam*, supra, 2015 U.S. Dist. LEXIS at \*4. The human resources specialist detailed how he compiled time and pay data, while defendant's expert declared how he reviewed and calculated data of another class action lawsuit overlapping with the present one, which included the exact number of shifts worked as well as the average hourly rate, among other critical figures during the relevant time period. Id. at \*4-5. Based on this evidence, the court found that the defendant had met its burden of establishing that the amount in controversy exceeded $5,000,000.00. Id. at \*12-13. While the preponderance standard is not a difficult one to meet, courts still need sufficient evidence to make a confident determination, as *Varsam* demonstrates.

2.   <u>Defendant's Estimate of Waiting Time Penalties is Conjured into   Existence</u>

Defendant assumes that the proposed class is approximately 775 members. Defendant asserts, without proof, that there were 463 non-exempt employees who were terminated between April 8, 2021 to April 8, 2025. Here, Defendant asserted estimate of unpaid wages, predicated entirely on speculative calculations, arbitrary "violation rates," and self-admitted "estimates and guesses" rather than actual payroll or time-keeping records, demonstrably falls short of this objective reasonableness standard. Defendant's failure to present verifiable documentation from their report, opting instead for unsubstantiated supposition regarding the amount of wages owed, renders its dispute neither objectively reasonable nor in good faith. Defendant fails to provide any details that would allow for a determination of the relevance of these "463 terminated non-exempt employees." Based on the figures represented by Defendant, it appears that Defendant assumes all 463 of these non-exempt employees earned $20.35 dollars per day, assumes the total number of 463 non-exempt employees, and determines the number of workweeks through conjecture. The evidence to support this assertion is omitted.

PLAINTIFF RHONDA CASANARES' NOTICE OF MOTION AND MOTION FOR REMAND;
MEMORANDUM OF POINTS AND AUTHORITIES

3.    Defendant's Estimate of Wage Statement Penalties Is Entirely Speculative

Defendant asserts that "Plaintiff alleges that FreshRealm "willfully and intentionally failed to make and/or keep records which accurately reflect the hours worked by Plaintiff and Plaintiff Class." NOR, at p. 12:4-6. The problem with this statement is that it does not provide Defendant with a basis to determine an accurate wage statement violation claim. "[C]ourts disavow the use of a 100% violation rate when calculating the amount in controversy absent evidentiary support." *Moreno v. Ignite Restaurant Group*, WL 1154063, at *5 (2014). Defendant arrives at a penalty amount of $1,356,000 and expects the Court to reverse engineer it.

"Conclusory allegations as to the amount in controversy are insufficient." *Matheson v. Progressive Specialty Insurance Co*., 319 F.3d 1089, 1090-1091. A "damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Ibarra*, 775 F.3d at 1199. Here, there was no objectively reasonable basis for Defendant's removal. Defendant failed to provide competent evidence of key variables necessary to calculate the amount in controversy, unjustifiably assumed 100% violation rates for each cause of action (which was expressly disapproved in *Ibarra*), and did not even bother to actually calculate the amount in controversy. Defendant simply assumed that the amount in controversy must exceed $5,000,000.00. In sum, Defendant provided no basis upon which this Court can conclude that the amount in controversy requirement has been met.

**B.    Defendant's Estimate of Attorney's Fees is an Assumption Based on Supposition**

Based on the above conjectures, Defendant estimates that the amount in controversy is "in excess of $7,685,958." Defendant then "anticipates" that Plaintiff will seek 25% of the preceding guestimate for attorney's fees. (NOR, at p.

14:1-2.) Where an estimate of attorney's fees is built on speculation of economic losses, the estimate is speculative and may not be considered in determining the amount in controversy. *Jian-Ming Zhao v. RelayRides*, No. 17-CV004099-JCS, 2017 WL 6336082, at *16 (N.D. Cal. 2017).

"[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). However, it "remains an open question whether attorney's fees that are anticipated but unaccrued at the time of removal or filing in federal court, such as those at issue in this case, may be included in the amount-in-controversy." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 649 n.2 (9th Cir. 2016); See also, *Williams v. ETC Institute*, No. 18-cv-01011-MEJ, 2018 WL 3105117, at *12 (N.D. Cal. 2018).

The split of authority was discussed in *Carranza v. Nordstrom, Inc.*, 2014 WL 10537816, (C.D. Cal. 2014), at *17 n.99. The majority of the cases cited within the Circuit declined to include post-removal estimates of attorney's fees in calculating the amount in controversy. *Carranza* concurred, holding that it "agrees with *Carranza* and those courts that have held that only attorneys' fees that have accrued as of the date of removal may be considered in determining whether the jurisdictional amount is at stake." *Id*; See also, *Faulkner v. Astro-Med, Inc.*, 1999 WL 820198, (N.D. Cal. 1999), at *4 ("When estimating attorney's fees for the purposes of establishing jurisdiction, the only fees that can be considered are those incurred as of the date of removal," citing *Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993)). "Estimates of attorney's fees must be based on more than speculation." *Faulkner*, 1999 WL 820198, (N.D. Cal. 1999), at *4, citing *Gaus v. Miles*, 980 F.2d 564, 567 (9th Cir. 1992).

"[E]ven in those cases where courts have considered future attorney's fees in determining the amount in controversy, these courts have required defendants to provide a reasonably specific showing as to why a certain fee award is appropriate."

*Gaasterland v. Ameriprise Financial Services, Inc.*, 2016 WL 4917018, (N.D. Cal. 2016), at *10. "Such calculations should be conservative estimates." *Sasso v. Noble Utah Long Beach, LLC*, 2015 WL 898468, (C.D. Cal. 2015), at *5. To arrive at reasonable estimates, the party seeking removal must produce evidence of attorney's fees in similar cases, including hourly rates and the number of hours expended through trial. See *Sasso*, WL 898468, at *7-8. Defendant failed to produce any evidence of the time spent or anticipated to be spent on this case or the customary hourly rates in this area of practice.

Simply put, Defendant failed to establish a reliable amount in controversy on which any attorney's fees may be based on. Because any estimate of future attorney time spent on this case would be speculative, this Court should side with the majority of the district courts that have considered this issue and held that post-removal fees cannot be included in the amount in controversy calculation.

## IV.    CONCLUSION

As described above, Defendant failed to meet its burden of proving federal court jurisdiction. Accordingly, Plaintiff respectfully request that this Court issue an Order remanding the above-entitled civil action to the Superior Court of the State of California for the County of Contra Costa.

Dated: June 16, 2025

**MAHONEY LAW GROUP, APC**

_____
Kevin Mahoney, Esq.
John A. Young, Esq
Attorneys for Plaintiff, RHONDA
CASANARES, and on behalf of all
others similarly situated

**PROOF OF SERVICE**
Code of Civ. Proc. § 1013a, subd. (3)

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

      I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 249 East Ocean Boulevard, Suite 814, Long Beach, California, 90802.

On **June 16, 2025,** I served [X] true copies [ ] originals of the following document(s):
1. **AMENDED PLAINTIFF'S OBJECTIONS TO DECLARATION OF GINA FARSCHMAN IN SUPPORT OF DEFENDANT FRESHREALM, INC'S NOTICE OF REMOVAL**
2. **AMENDED PLAINTIFF RHONDA CASANARES' NOTICE OF MOTION AND MOTION FOR REMAND; MEMORANDUM OF POINTS AND AUTHORITIES**

I served the document(s) on the person(s) below as follows:

| | |
|---|---|
| Diyari Vazquez (SBN 222461)<br>Melissa N. Eubanks (SBN 274491)<br>**VGC, LLP**<br>9461 Charleville Blvd. #757<br>Beverly Hills, California 90212 | Attorneys for Defendant FRESHREALM INC.<br><br>Telephone:   (424) 272-9855<br>Email:        dvazquez@vgcllp.com<br>               meubanks@vgcllp.com |

      The document(s) were served by the following means:

      ☒ **By e-mail:** Based upon court order or an agreement of the parties to accept service by e-mail, I caused the document(s) to be sent to the persons at the electronic service addresses listed above from the email address mbarreto@mahoney-law.net. Within a reasonable time after the transmission, no error, electronic message or any other indication that the transmission was unsuccessful was received.

      ☒ **(State):** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

      Executed on **June 16, 2025**, at Long Beach, California.

_____
MARYANN BARRETO