UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RHONDA CASANARES,<br><br>Plaintiff,<br><br>v.<br><br>FRESHREALM, INC.,<br><br>Defendant. | Case No. 4:25-cv-04249-KAW<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**<br><br>Re: Dkt. No. 12 |

Plaintiff Rhonda Casanares filed the instant putative class action against Defendant FreshRealm, Inc., alleging violation of various California Labor Code provisions. (Compl., Dkt. No. 1-2.) Plaintiff seeks to represent a proposed class of all current and former non-exempt employees who worked for Defendant in California. (Compl. ¶ 1.) On May 16, 2025, Defendant removed the case from state court, asserting jurisdiction under the Class Action Fairness Act ("CAFA"). (Not. of Removal, Dkt. No. 1 at 3.) Pending before the Court is Plaintiff's motion to remand.

The Court previously deemed this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b). Having considered the parties' filings and the relevant legal authorities, the Court DENIES Plaintiff's motion to remand.

## I.   BACKGROUND

Plaintiff Rhonda Casanares was employed by Defendant FreshRealm, Inc. as a non-exempt employee in Richmond, California from May 2014 until on or around December 4, 2024 at Defendant's place of business in Richmond, California. (Compl., Dkt. No. 1-2 ¶ 7.) During the relevant time period, April 8, 2021 to present, Defendant employed approximately 775 non-exempt employees in California. (Decl. of Gina Farschman, "Farschman Decl.," Dkt. No. 1-8 ¶ 8.)

1    At least 339 of those non-exempt employees remained employed with FreshRealm after April 8,
2    2024, while 463 non-exempt employees were terminated from April 8, 2021 to present. *Id.* All
3    non-exempt employees were paid on a weekly basis and were considered to be full-time
4    employees who were typically scheduled for eight-hour shifts, five days per workweek.
5    (Farschman Decl. ¶ 9.)

6    Plaintiff alleges that Defendant failed to: (1) pay employees for hours worked, including
7    minimum wages and overtime; (2) provide meal and rest periods or provide compensation in lieu
8    thereof; (3) provide accurate, itemized wage statements; and (4) pay all wages due upon separation
9    of employment. (Compl. ¶ 2.)

10   With respect to failure to pay wages for all hours worked, Plaintiff alleges that the putative
11   class was "routinely required to work through their second meal breaks." (Compl. ¶ 39.)  As a
12   result, Defendant did not factor in meal premiums when calculating overtime pay. *Id.* As to the
13   failure to provide meal periods, Plaintiff alleges that Defendant "failed to provide legally
14   compliant second meal periods, in addition to impeding, discouraging, dissuading and/or not
15   relieving Plaintiff and the Plaintiff Class from all work duties during meal periods…." (Compl. ¶
16   44.)  Plaintiff further alleges that Defendant failed to "reasonably make available rest breaks…
17   due to understaffing, workload, and demands." (Compl. ¶ 52.)  Plaintiff further alleges that,
18   "[w]hen they worked six (6) to eight (8) hours in a workday, Plaintiff and Plaintiff Class often
19   only received one rest period instead of the two required by law." *Id.*  Based on these claims,
20   Plaintiff contends that Defendant failed to provide accurate wage statements or timely pay for all
21   wages due after employment was terminated.  (Compl. ¶¶ 59, 68.)

22   On May 16, 2025, Defendant removed this case to federal court under CAFA, asserting
23   that the amount in controversy exceeded $5 million.  (Not. of Removal at 5.)

24   On June 16, 2025, Plaintiff filed the instant motion to remand, challenging Defendant's
25   calculations of the amount in controversy. (Pl.'s Mot., Dkt. No. 12.)  On June 30, 2025, Defendant
26   filed its opposition.  (Def.'s Opp'n, Dkt. No. 13.)  On July 7, 2025, Plaintiff filed a reply.  (Pl.'s
27   Reply, Dkt. No. 14.)

28

## II. LEGAL STANDARD

In general, "a defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014) (quoting 28 U.S.C. § 1446(a).) When a defendant removes a case, the "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554. From there, "the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 553. If, however, the plaintiff contests the amount in controversy, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 554 (citing 28 U.S.C. § 1446(c)(2)(B)).

The defendant who seeks removal has the burden to show by a preponderance of evidence that the amount in controversy is adequate. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). To do so, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id.* (internal quotation omitted). Under this standard, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

With respect to CAFA, "CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra*, 775 F.3d at 1195. "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damage exposure." *Id.* at 1198. Notably, the Ninth Circuit has explained that "Congress and the Supreme Court have instructed [the courts] to interpret CAFA's provisions . . . broadly in favor of removal . . . ." *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015); *see also Ibarra*, 775 F.3d at 1197 ("Congress intended CAFA to be interpreted expansively").

### III. DISCUSSION

**A. CAFA Amount in Controversy**

Plaintiff moves to remand on the grounds that Defendant has failed to show by a preponderance of evidence that the amount in controversy exceeds CAFA's jurisdictional threshold of $5,000,000. (Pl.'s Mot. at 3.)

**i. General allegations of speculation**

As an initial matter, Plaintiff argues that Defendant's calculations are all based on mere speculation. (*See* Pl.'s Mot. at 6-7.) While Plaintiff contentions regarding violation rates will be addressed below, her argument regarding the workweek calculation is not well taken. *Id.* at 7. Specifically, Plaintiff's argument that Defendant is required to provide "precise, verifiable figures for actual workweeks and employees" in support of removal is not supported by law. *Id.* To the contrary, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014).

The Court finds that Defendant did provide sufficient evidence to support the number of putative class members, which are approximately 775, based off of personnel records, and a report generated from timekeeping records and payroll data. (Farschman Decl. ¶¶ 5, 8.) Defendant used a weekly pay period for its nonexempt California employees during the entire class period, and calculated the aggregate number of weeks the putative class members were employed. *Id.* at ¶ 11. Based on the data, Ms. Farschman took the total number of workweeks the non-exempt California employees were employed during the class period and estimated that they only worked 90% of those weeks to account for vacation, sick leave, and other forms of leave, which totaled 30,751 aggregate weeks. (Farschman Decl. ¶ 10.) As a result, the Court finds that these assumptions are not speculative, and, in fact, may be conservative, as the estimate included more than 5 missed weeks of work. *See id.*

Finally, the Court notes that Plaintiff does not meaningfully dispute Defendant's

4

calculation of the average hourly rate, which is $20.35. (Farschman Decl. ¶ 9.)

Accordingly, the Court finds that Defendant has provided sufficient evidence in support of these assumptions made in connection with Defendant's amount in controversy calculation, and Plaintiff's objections (Dkt. No. 12-1) to the Farschman declaration are overruled.[1]

### ii. Meal and Rest Breaks

Defendant estimates that the amount in controversy for the meal break violations is $1,251,566, assuming a violation rate of 40%. (Not. of Removal at 9.) This assumes two meal premium penalties per workweek and is calculated by multiplying the average hourly wage of non-exempt employees in California from April 8, 2021 to present ($20.35) by 2 premiums by the aggregate workweeks during the class period (30,751), which totals $1,251,566. *Id.*

Defendant estimates that the amount in controversy for the rest break violations is $1,877,349. *Id.* Assuming that the class worked five shifts per workweek, Defendant applied a 30% violation rate, which assumes missing three of 10 rest breaks, to come up with the following calculation: $20.35 x 3 x 30,751 workweeks = $1,877,349. (Not. of Removal at 9-10.)

In challenging this calculation, Plaintiff's primary argument is that there is nothing to support 40% and 30% violations rates, because there is no allegation of "policy and practice." (Pl.'s Mot. at 8.) In opposition, Defendant argues that Plaintiff has effectively alleged a "policy and practice" that supports these violations rates. (Def.'s Opp'n at 14.) Specifically, Defendant cites Paragraph 18 of the Complaint, which alleges that "Defendant had a pattern, practice, and policy of not providing compliant meal periods." (Def.'s Opp'n at 14 (citing Compl. ¶ 18.).) Similarly, Plaintiff alleges that "Defendant had a pattern, practice, and policy of not providing uninterrupted rest periods." (Compl. ¶ 19.)

In general, courts in this district have "found a 50% violation rate for meal and rest break violations reasonable in [cases with] allegations of a 'pattern or practice' of meal and rest break violations." *Ramirez v. HV Glob. Mgmt. Corp.*, No. 21-CV-09955-BLF, 2022 WL 1210402, at *5

---

[1] Plaintiff's objections are largely based on foundation, but the Court finds that Ms. Farschman's declaration adequately addresses how she, as Defendant's Human Resources Director, has personal knowledge and provides adequate foundation, including that she generated a report that provided the basis for the facts set forth in her declaration. (*See* Farschman Decl. ¶¶ 2, 5, 7.)

(N.D. Cal. Apr. 25, 2022); *see also Amezcua v. CRST Expedited Inc.,* 653 F. Supp. 3d 712, 721 (N.D. Cal. 2023) (finding a twice-per-week violation rate was reasonable where the plaintiff had alleged that the defendants had a "policy and practice" of denying meal breaks). Here, despite her protestations to the contrary, Plaintiff has alleged a pattern or practice of missed rest and meal breaks. (*See* Compl. ¶¶ 18-19.) Thus, the Court finds that Defendant's assumption of a twice per week violation rate for missed meal periods is reasonable, as is the 30% violation rate for missed rest breaks. Indeed, it is not unreasonable to assume that a policy was enforced much of the time. *See Amezcua*, 653 F. Supp. 3d at 721 (citing *Mendoza v. Nat'l Vision, Inc.*, No. 19-CV-01485-SVK, 2019 WL 2929745, at *4 (N.D. Cal. July 8, 2019) (finding assumption of weekly violations reasonable where plaintiff alleged defendant regularly and repeatedly failed to provide class members with meal and rest breaks and that this was a policy and practice) (collecting cases finding same)).

Accordingly, the Court finds that the rest and meal breaks are $1,251,566 and $1,877,349, respectively, which totals $3,128,915.[2]

### iii. Unpaid Wages and Overtime Claim

Plaintiff essentially concedes that the unpaid wages and overtime claim is derivative of her meal and rest period premium claims. (*See* Pl.'s Mot. at 7-8.) In calculating the amount in controversy, Defendant estimates that the overtime claim is worth $939,751, based on an estimated one hour of uncompensated overtime per week ($20.35/average hourly rate x 1.5 overtime rate x 30,751 workweeks). (Not. of Removal at 10.) The Court, however, calculates this amount to total $938,828.03.[3] While not included in the amount in controversy for the purposes of removal, Defendant estimates that the minimum wage claim is worth an additional $625,783 based on one hour of uncompensated regular time per week ($20.35 x 30,751 workweeks). (Def.'s Opp'n at 18 n. 4.)

Plaintiff argues that these penalties are conjecture based on all of the assumptions made in

---

[2] The Court notes that Defendant miscalculated this amount to total $3,788,270. (*See* Def.'s Opp'n at 16.)
[3] Defendant calculates the overtime rate ($20.35 x 1.5) as $30.56, when it equals $30.53 per hour.

6

1 connection with the number of workweeks, and the average hourly rate. (Pl.'s Mot. at 9.) As
2 discussed above, the Court does not find these speculative, as they were based on reports and data
3 kept in the course of business. *See* discussion, *supra,* Part III.A.i.

Some courts in this circuit have found that allegations of a "uniform policy and scheme," a "regular or consistent practice," or "pattern or practice" can justify an assumption of one hour of overtime per week. *See Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 U.S. Dist. LEXIS 27215, at *16 (N.D. Cal. Mar. 1, 2012) (permitting assumption of one hour of overtime pay per week based on allegations that the defendant engaged in "a uniform policy and systematic scheme" of failing to pay for all hours worked); *Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 U.S. Dist. LEXIS 170464, at *13 (N.D. Cal. Dec. 9, 2014) (permitting assumption of one hour of overtime pay per week based on allegations that the putative class was required to "work on a regular and consistent basis without receiving" overtime and that the defendant had a "policy" of not paying owed overtime). Here, this claim is derivative of the meal and rest period claims, which assumes that at least one meal or rest period was missed during the week. Thus, the assumption of one hour of overtime pay per week based on these allegations is reasonable.

Since the minimum wage portion of this claim was not included in the notice of removal's amount in controversy, the Court finds that Plaintiff's unpaid wages claim is worth $938,828.03, increasing the amount in controversy to $4,067,743.03.

### iv. Waiting Time Penalties

Defendant estimates that the waiting time penalties claim is worth $2,261,292 ($20.35/average hourly rate x 8 hours x 30 days x 463 employees who were terminated). (Not. of Removal at 11; Farschman Decl. ¶ 8.)

First, Plaintiff argues that Defendant's assumption of a 100% violation rate is unreasonable and that the assertion that there are 463 terminated employees is made without proof. (Pl.'s Mot. at 9.) The number of terminated employees, however, was determined by Ms. Farschman running a report of the relevant time period, so this information is supported by evidence. (*See* Farschman Decl. ¶ 8.) Plaintiff further argues that the average hourly rate assumption and the number of total

7

1  workweeks is mere conjecture. *Id.* Since the Court has already found these assumptions reasonable
2  based on the Farschman report, the Court disagrees. *See* discussion, *supra,* Part III.A.i.

3  "[C]ourts in this district and others within the Ninth Circuit have accepted a 100-percent
4  violation rate where the plaintiff has (1) tied waiting-time penalties to other claims and (2) the
5  defendant specifically accounts for only terminated employees." *Salonga v. Aegis Senior Cmtys.,*
6  *LLC*, No. 22-cv-00525-LB, 2022 U.S. Dist. LEXIS 82497, at *11-12 (N.D. Cal. May 6, 2022); *see*
7  *also Trigueros v. Stanford Fed. Credit Union*, No. 21-cv-01079-BLF, 2021 U.S. Dist. LEXIS
8  120271, at *17 (N.D. Cal. June 28, 2021) (allowing 100% violation rate where the plaintiff tied
9  waiting time penalties to other claims and the defendant only accounted for terminated
10 employees); *Kastler v. Oh My Green, Inc.*, No. 19-cv-02411-HSG, 2019 U.S. Dist. LEXIS
11 185484, at *16 (N.D. Cal. Oct. 25, 2019) (same).

12 Here, Plaintiff's waiting time penalties are based on the failure to pay minimum wages,
13 overtime wages, and the meal and rest penalties. (Compl. ¶¶ 55, 59.)  Additionally, the penalties
14 are based on the number of terminated employees.  Thus, "[b]y tying the unpaid final wage claim
15 to his other claims, [Plaintiff] makes [Defendant's] assumption of 100% violation for unpaid
16 wages reasonable—that is, if every putative class member incurred damages for at least one other
17 claim in the complaint, every class member who departed [Defendant] during the statutory period
18 was due unpaid wages." *Chavez*, 2019 U.S. Dist. LEXIS 59399, at *9-10.

19 Accordingly, the Court finds Defendant's $2,261,292 estimate to be reasonable.
20 Combined with the estimated overtime and rest period penalties, the cumulative amount in
21 controversy, thus far, is $6,329,035.03, which exceeds the CAFA jurisdictional threshold for
22 removal.

23     **v.**  **Noncompliant Wage Statements (California Labor Code § 226(e))**

24 Pursuant to Labor Code § 226(e), "[a]n employee suffering injury as a result of a knowing
25 and intentional failure by an employer" to provide a compliant wage statement is entitled to a
26 statutory penalty of "fifty dollars ($50) for the initial pay period in which a violation occurs and
27 one hundred dollars ($100) per employee for each violation in a subsequent pay period."

28 While Defendant has already exceeded the jurisdictional threshold for CAFA jurisdiction,

8

based on the one-year statute of limitations for this claim, and on the statutory maximum of $4,000, Defendant estimates that Plaintiff's claim regarding noncompliant wage statements is worth $1,356,000 (339 employees as of April 8, 2024 x $4,000 penalty). (Not. of Removal at 13; Farschman Decl. ¶ 8.)

Again, Plaintiff argues that Defendant's assumption of a 100% violation rate is unreasonable. (Pl.'s Mot. at 10.) The Court finds that, based on the pleadings, Defendant may assume a 100% violation rate due to the missed meal and rest periods, and that the statutory maximum applies, because the putative class was paid on a weekly basis and has not been paid the monies allegedly owed. (*See* Farschman Decl. ¶ 11.)

Accordingly, the Court finds Defendant's estimate of $1,356,000 to be reasonable. Combined with the prior amounts, the cumulative amount in controversy is $7,685,035.03.

### vi. Attorneys' Fees

Finally, Defendant calculates Plaintiff's attorneys' fees at an estimated 25% of the possible recovery. (Not. of Removal at 13.) Defendant calculates the total recovery to be at least $7,685,958. *Id.* As a result, for the purposes of CAFA, Defendant estimates attorneys' fees to be $1,921.490. *Id.* at 14.

Ultimately, the Court need not include any estimated attorneys' fees in the amount in controversy, because the claims themselves far exceed CAFA's jurisdictional threshold of $5,000,000.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that Defendant has demonstrated that the amount in controversy exceeds CAFA's jurisdictional threshold of $5,000,000 and DENIES Plaintiff's motion to remand.

IT IS SO ORDERED.

Dated: September 23, 2025

KANDIS A. WESTMORE
United States Magistrate Judge